# Case No. 15,496.

## UNITED STATES v. JONES et al.

### [3 Wash. C. C. 228.] [1]

Circuit Court, D. Pennsylvania. April Term, 1814.

PIRACY — UNLAWFUL ACTS OF PRIVATEERS — EVIDENCE.

1. Indictment for piracy committed on a Spanish vessel by the defendants, the first lieutenant and subaltern officers of the American privateer Revenge. As there is no proof that in the first instance any unlawful acts were meditated by the commander of the Revenge and his officers, it will not be sufficient to prove acts of robbery committed by him and his crew generally— it must be proved that the defendants participated in the taking, and that they did it feloniously.

2. The jury should be satisfied, if they believe that the defendants participated in the taking of the property from on board the Spanish vessel, that they knew, or might have known, at the time of capture, that robbery, and not capture as prize, was contemplated.

3. The captain of the Revenge may have been guilty of robbery, and those who executed his orders be innocent.

This was an indictment against these persons [Jones, Pickle, and Reese] for piracy. committed on the high seas. Jones was the first lieutenant, and the other defendants subaltern officers on board of the Revenge, a commissioned privateer commanded by Captain Butler. It was proved, that during her cruise, in November, 1812, she fell in with a Spanish ship on a voyage from Havana to Cadiz. which she had chased for upwards of an hour before she came up with her. The Revenge was under English colours, and the ship under Spanish, as proved on the part of the prosecution—and under English, as stated by some of the prisoners' witnesses. The ship fired two guns to windward, but at such a distance as could not reach the privateer. and which was done, as was proved by one of the mariners of the ship, to induce the privateer to display her real character. When the privateer got near to her, she gave her a broadside, and afterwards a discharge of musketry; and she struck her colours. The witnesses for the prosecution stated that all these acts of hostility were committed under English colours, which was denied by those for the prisoners. The captain of the ship was ordered on board with his papers. and he, together with the crew who accompanied him, were put into irons, and placed on the deck. Jones was ordered to go on board the ship, and examine into her character. It is doubtful, from the evidence, whether it was during the half-hour that he remained in

[1] [Originally published from the MSS. of Hon. Bushrod Washington. Associate Justice of the Supreme Court of the United States. under the supervision of Richard Peters, Jr., Esq.]

the ship, or after he had returned to the privateer, that a bag of dollars was brought by some of the crew of the privateer from the ship to the privateer. Butler, having learned from the Spanish captain that he had more silver on board, he sent information of this discovery to Pickle and those then on board the ship, with directions to search for and send it to the privateer. Eight boxes were accordingly brought to the privateer, containing 3000 dollars each, which, by Butler's orders, were deposited in the cabin. By orders from the same quarter, the persons of the Spanish captain and his crew were searched for valuables; and five doubloons, and a gold watch, were taken from one of them by Butler, and deposited in the cabin. The captain and crew of the Spanish ship were then sent on board their ship, and ordered to make sail; which they did. It was proved, that when Jones returned from the Spanish ship, he reported to the captain that she was Spanish.

Two or three days after this transaction, the privateer again overhauled this same ship making for Savannah, with a view, as the captain said, to repair the losses they had sustained in the clothes taken from his crew, by those of the Revenge. Butler returned them some of their clothes, and then ordered the Spanish captain to proceed on his voyage, threatening to sink him if he should meet with him again on the American coast; and the better to ensure his departure, he convoyed him from the coast for about two days. Within a day or two after the money was taken from the ship, it was divided amongst the officers and crew, although no direct proof was given, that the prisoners received any part of it. The Revenge put into Charleston, where no proceedings were instituted for condemning the property taken from the Spanish ship. Butler was apprehended and tried at Charleston. The prisoners came on to Philadelphia, where they were apprehended.

It was contended, by Mr. Rawle and Charles J. Ingersoll, for the prisoners, that robbery, not being defined by any statute of congress, the common law cannot be resorted to in order to prove, that the taking in this case amounted to that offence. It was also contended, that a commissioned privateer cannot commit piracy. Upon the merits, it was argued, that the seizure in the first instance, was for the purpose of examination; and of course, that all the acts of the prisoners were then performed in obedience to the lawful commands of Captain Butler, and could not be rendered criminal by the subsequent unlawful conduct of the captain.

WASHINGTON, Circuit Justice (charging jury). All the legal objections urged by the counsel for these prisoners, were examined and decided by the court, in the case of U. S. v. Jones, which was tried twelve months ago; which opinion it will be sufficient to read on this occasion. See [Cases Nos. 15,-494 and 15,495]. We pass on, therefore, to the only question which is at all important in this case; and that is, whether the felonious intent with which the prisoners are charged to have spoiled the Spanish vessel, is made out by the evidence.

That an act of piracy, never surpassed in atrocity, has been committed in this case, cannot be denied by any person who has heard the evidence. But since there is no proof, that, in the first instance, any unlawful acts were avowed by Captain Butler, or meditated by his officers and crew, it will not be sufficient, to prove acts of robbery committed by him and his crew generally; to convict the prisoners, it must not only be proved that they participated in the taking, but that they did it feloniously. Whether the first is brought home to all the prisoners, must depend upon the evidence, of which the jury will judge. But should the fact, in your opinion, be sufficiently established, still, you must be satisfied, that the prisoners knew, or ought to have known, at the time they acted, that robbery and not a seizure as prize, was contemplated by the captain or themselves; and it is in this point of view only, that the orders of Captain Butler can, in any manner, afford a shield to those whose duty it was to obey them. For, he may have been guilty of robbery, and those who executed his orders be innocent, or partakers in his guilt, according to the circumstances of the case. If Captain Butler intended to act within the scope of his commission, he had an authority to bring this vessel to, to examine her papers, her officers and crew; and to take as much time as was necessary to enable him to decide ultimately as to her real character, and as to the conduct which it would become him to pursue. If he concluded that the ship and cargo, or the latter, really belonged to the enemy, or that she had been guilty of unneutral conduct, and was of course good prize, it was his duty to put a prize-master on board of her, and to send her in to some port of the United States for adjudication. It was not regular for him to break bulk, and to take any part of the cargo on board the privateer, unless in a case of necessity, as where he had not a sufficient number of men to spare as many as might be necessary to bring the prize into port. This was not the case with the Revenge. But this irregularity would not, of itself, be sufficient to render the conduct of Captain Butler criminal, if he had in other respects shown that his intentions were honest. So far from this, he gives the most complete proof of the intention with which this seizure was made, by dividing the spoil with his crew, ordering the Spanish vessel from the coast, and after he got to Charleston, taking no steps to obtain a condemnation of the property he had seized. This conduct would be sufficient to establish the charge of piracy against Butler; as much so, as if he had declared, in the first instance, that the seizure

was not as prize, but with a view to plunder.

But, in relation to those who acted under the orders of Butler, the same inference does not necessarily follow. He had a right to command those persons to visit the Spanish ship, to bring away her papers, and if he pleased to go so far, even to tranship her cargo, and to take from the persons of the crew, whatever valuables might be found on them. These orders were not inconsistent with the act of seizing the property as prize, and at most, could only be considered as equivocal. Unattended by other circumstances, to induce a well-grounded suspicion of the honesty of Butler's intentions, the orders were legal, and the prisoners were bound to obey them. If so, the subsequent evidence which the conduct of Butler afforded of the quo animo, with which the seizure was made, cannot be used against these men, to fix the charge of a felonious taking upon them, notwithstanding it was quite sufficient to criminate him, who gave the orders. The prisoners acted very improperly, in accepting any share of the plunder, before it was regularly condemned; but this would not, of itself, afford direct proof, that they executed the orders of their commander, knowing that they were illegal and criminal. It must, at the same time, be admitted, that connecting all the subsequent events with the original taking, the innocence of the prisoners may well be suspected; and the jury may presume, that they acted under an impression from the beginning, that it was not the intention of Capta n Butler to seize this property as prize. It does not appear, that an intention to make a seizure of this character, was ever declared by Butler. The ordering the Spanish vessel from the coast; the division of the plunder; and the secrecy observed in relation to these transactions by Butler and the prisoners, after they landed at Charleston, without a murmur of disapprobation having at any time been heard to escape from the prisoners to the captain; are all circumstances to be weighed by the jury, to prove a felonious intent in the prisoners, at the time they obeyed the orders of their commander. Should you, gentlemen, be of opinion, that this is the fair inference to be deduced from those circumstances, then the prisoners cannot shield themselves under the orders of their captain; and in that case, your verdict ought to find them guilty. But if you cannot conscientiously make such an inference, then it will be your duty to acquit the prisoners.

Verdict. "Not guilty."